UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**COPY**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| ALEXANDER GRAHAM and | \* |
| JOSE CUEVAS, | \* |
|       Plaintiffs | \*   Civil No.: |
| vs | \*   3:03 CV 990 (AWT) |
| FIRELINE, INC., | \* |
|       Defendant | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEPOSITION OF JOSE CUEVAS

Taken pursuant to Federal Rules of Civil Procedure 30 and 34, held at the law offices of EDWARDS & ANGELL, 90 State House Square, Hartford, Connecticut, before Cynthia Trotta, a Registered Professional Reporter and a Notary Public in and for the State of Connecticut, on TUESDAY, MAY 25, 2004, at 10:20 a.m.

BEECHER & HORVATH

A P P E A R A N C E S :

    ATTORNEY FOR THE PLAINTIFFS:

        MONGILLO, INSLER & VIRGULTO, P.C.
           26 Elm Street
           P.O. Box 415
           New Haven, Connecticut  06502
        BY:  THOMAS A. VIRGULTO, ESQ.

    ATTORNEYS FOR THE DEFENDANT:

        EDWARDS & ANGELL, LLP
           90 State House Square
           Hartford, Connecticut  06103
        BY:  CHARLES F. GFELLER, ESQ.

    ALSO PRESENT:

        TERRENCE D. NEUMEYER, Westfield Group

S T I P U L A T I O N S

IT IS STIPULATED by the attorney for the Plaintiff and the attorney for the Defendant that each party reserves the right to make specific objections in open court to each and every question asked and the answers thereto given by the witness, reserving the right to move to strike out where applicable, except such objections as to the form of the question, which would be stated during the course of the deposition.

IT IS STIPULATED AND AGREED among counsel for the parties that the proof of the authority of the Notary Public before whom this deposition is taken is waived.

IT IS STIPULATED AND AGREED among counsel for the parties that the reading and the signing of the deposition is not waived.

IT IS STIPULATED AND AGREED TO among counsel for the parties that any defect as to the notice for the deposition is waived.

```
 1          J O S E    C U E V A S,
 2       having been first duly sworn by Cynthia Trotta, a Notary
 3       Public in and for the State of Connecticut, testified
 4       upon his oath as follows:
 5
 6  DIRECT EXAMINATION
 7  BY MR. GFELLER:
 8       Q    Good morning, Mr. Cuevas.  My names is Charles
 9  Gfeller; I represent Fireline, Incorporated, which is a
10  defendant in a lawsuit that you've brought.  We're here
11  today to take your deposition.  Have you ever had your
12  deposition taken before?
13       A    No.
14       Q    Okay.  Let me just go through a couple of ground
15  rules that will hopefully make the process go a little more
16  smoothly.  The court reporter is going to take down anything
17  that any of us say today.  So it's important that you keep
18  your voice up when you're answering my questions so she can
19  hear you and transcribe what you say.
20            Along those lines, it's also important that we
21  try not to speak over one another.  There may be some
22  questions where we sort of get into a little bit of a
23  conversation and you know what I'm about to ask you, but it
24  would be helpful if you would let me finish my question
```

```
 1    inside -- the water got inside the billet, and it blew up
 2    the steam that burned us.
 3         Q    The supervisor that you called over was Al
 4    Graham?
 5         A    Yes.
 6         Q    You said you guessed that the cup broke.  Did you
 7    see the cup break with your own eyes?
 8         A    No, I didn't see it break but --
 9         Q    I just want a yes or no to the question.
10         A    Okay.
11         Q    Why do you think that the cup broke?
12         A    I think the cup broke because instead of the
13    metal being dispersed to cool off, it just -- it just shot
14    right inside -- inside the billet, straight down, causing it
15    to swell up and burst.
16         Q    You're guessing that that's what happened?  You
17    don't have any --
18         A    No.
19         Q    You can't prove that's what happened, correct,
20    you are guessing?
21         A    When they inspected the accident, the
22    president -- the union president, he told me that the right
23    cup was broke, because it happened so fast, I didn't
24    realize.
```

1    Q    Did he tell you that the right cup was broken
2    before the explosion specifically?
3    A    No, not before the explosion.
4    Q    Right.
5    A    After the explosion.
6    Q    It was broken during the explosion?
7    A    It was broke when they inspected.
8    Q    Right. So you don't know that the cup was broken
9    before the explosion, do you?
10   A    No.
11   Q    All you know is that after the explosion you were
12   told the cup was broken?
13   A    Yes.
14   Q    And who was the union president?
15   A    Willie Sander.
16   Q    So not knowing that the cup was -- withdrawn.
17   Since you don't know that the cup was broken before the
18   explosion, you can't tell me with certainty that the cup
19   caused the -- the breakage of the cup caused the explosion,
20   correct?
21   A    Yes.
22   Q    You can't tell me that, can you?
23   A    No, I can't tell you that.
24   Q    You were aware prior to June 3, 2000 that water,

```
 1    when it comes into contact with molten, can cause a flash
 2    explosion, correct?
 3        A    Yes.
 4        Q    That's something that every caster knows that
 5    works with molten metal anywhere near water, correct?
 6        A    Yes.
 7        Q    Is that a fundamental safety issue with casting,
 8    correct?
 9        A    Yes.
10        Q    Going back to the start when I asked you to tell
11    me about the incident, you set up the station.  The cups,
12    when you set up the station, you inspected them?
13        A    Yes.
14        Q    And you didn't see any cracking?
15        A    No.
16        Q    And it's your testimony today that you
17    specifically recall going to the storeroom to get those
18    cups?
19        A    Yes.
20        Q    Have you personally seen the cup?
21        A    No.
22        Q    Do you know where that cup is, the allegedly
23    broken cup?
24        A    No.
```

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT



```
* * * * * * * * * * * * * * * * * *
ALEXANDER GRAHAM and              *
JOSE CUEVAS,                      *
            Plaintiffs            *   Civil No.:
       vs                         *   3:03 CV 990 (AWT)
FIRELINE, INC.,                   *
            Defendant             *
* * * * * * * * * * * * * * * * * *
```

DEPOSITION OF ALEXANDER GRAHAM

Taken pursuant to Federal Rules of Civil Procedure 30 and 34, held at the law offices of EDWARDS & ANGELL, 90 State House Square, Hartford, Connecticut, before Cynthia Trotta, a Registered Professional Reporter and a Notary Public in and for the State of Connecticut, on WEDNESDAY, MAY 26, 2004, at 10:35 a.m.

BEECHER & HORVATH

2

A P P E A R A N C E S :

ATTORNEY FOR THE PLAINTIFFS:

    MONGILLO, INSLER & VIRGULTO, P.C.
        26 Elm Street
        P.O. Box 415
        New Haven, Connecticut  06502
        BY:  THOMAS A. VIRGULTO, ESQ.


ATTORNEYS FOR THE DEFENDANT:

    EDWARDS & ANGELL, LLP
        90 State House Square
        Hartford, Connecticut  06103
        BY:  CHARLES F. GFELLER, ESQ.


ALSO PRESENT:

    TERRENCE D. NEUMEYER, Westfield Group

3

## S T I P U L A T I O N S

IT IS STIPULATED by the attorney for the Plaintiff and the attorney for the Defendant that each party reserves the right to make specific objections in open court to each and every question asked and the answers thereto given by the witness, reserving the right to move to strike out where applicable, except such objections as to the form of the question, which would be stated during the course of the deposition.

IT IS STIPULATED AND AGREED among counsel for the parties that the proof of the authority of the Notary Public before whom this deposition is taken is waived.

IT IS STIPULATED AND AGREED among counsel for the parties that the reading and the signing of the deposition is not waived.

IT IS STIPULATED AND AGREED TO among counsel for the parties that any defect as to the notice for the deposition is waived.

```
 1          A L E X A N D E R   G R A H A M,
 2          having been first duly sworn by Cynthia Trotta, a Notary
 3          Public in and for the State of Connecticut, testified
 4          upon his oath as follows:
 5
 6     DIRECT EXAMINATION
 7     BY MR. GFELLER:
 8          Q    Good morning, Mr. Graham.
 9          A    Good morning.
10          Q    My name is Charles Gfeller; I represent Fireline,
11     Incorporated, which is the defendant in a lawsuit you have
12     brought we're here to talk about today.  Have you ever had
13     your deposition taken?
14          A    No.
15          Q    So you never sat through one of these proceedings
16     before?
17          A    No.
18          Q    Let me explain a couple of ground rules that will
19     help make the process go smoothly, hopefully.  The court
20     reporter is going to take down everything that we say today,
21     so it's important you keep your voice up and that you answer
22     my questions with words.  Nods of the head, shrugs of the
23     shoulders can't be taken down by the court reporter.  So if
24     it's a yes or no answer, you need to say "Yes" or "No."
```

```
 1   about two minutes.
 2        Q    So from the time he first called you over to the
 3   time you got there was about two minutes?
 4        A    (Deponent nods head affirmatively.)
 5        Q    And the desk is about 75 feet away from --
 6        A    Yes.
 7        Q    -- station 21?
 8        A    Mm-hmm.
 9        Q    So the first thing that you recall him telling
10   you when you arrived at the station was that it looked like
11   the cup had broken?
12        A    Mm-hmm.
13        Q    Did you see anything?  Could you see the cup?
14        A    I didn't have a face shield on.
15        Q    So you didn't get close enough?
16        A    I was close enough to see the molten metal on
17   top, you know, in the molds.
18        Q    But you didn't see a broken cup?
19        A    No, I didn't.
20        Q    And you don't have any independent basis for
21   concluding that the cup had broken other than what Mr.
22   Cuevas had told you, correct?
23        A    That's about it.
24        Q    You can't testify that the cup broke and that
```

```
1     caused this to happen because you don't know, correct?
2        A     No.
3        Q     I'm correct?
4        A     You're right.
5        Q     Have you seen the cup since this incident?
6        A     Those cups?
7        Q     The cup that was supposedly broken.
8        A     When I got out of the hospital and got back to
9     work, no.
10       Q     So you've never seen the cup?
11       A     No.
12       Q     Do you know where the cup is today?
13       A     No.
14       Q     Do you know where the cup has been at any point
15    between the time of the accident and today?
16       A     No.
17       Q     Have you ever asked anybody to see the cup?
18       A     They wasn't nowhere to be found.
19       Q     The cup wasn't?
20       A     No.
21       Q     Did you say anything to Mr. Cuevas when you got
22    over to the station?
23       A     I told him, "Set it back."
24       Q     Set what back?
```

```
 1        A    No.
 2        Q    And so you'd be guessing to say that the cup
 3   caused this incident to happen, correct?
 4        A    (No response.)
 5        Q    I mean, if you don't know any of those things,
 6   how can you tell me anything other than that?
 7        A    Wait a minute, wait a minute, wait a minute.  It
 8   all depends.  You got to know your alloys.  The semi-alloys
 9   are -- just don't do these things, and that's one of them,
10   unless you got something seriously wrong.
11        Q    Is it commonly understood in the casting business
12   that if molten metal and water come into contact, there's
13   going to be a flash explosion?
14        A    There's no question about it.
15        Q    That's something every caster in that business
16   knows?
17        A    No question about it.
18        Q    That's something as fundamental as teaching a kid
19   to looks both ways before crossing the street, right?
20        A    Yes.
21        Q    And if you see a billet swelling, what is the
22   next logical sequence of seeing a billet swelling?
23        A    Stop the pour.
24        Q    Okay.  Because if the billet swells, the billet
```