UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALEXANDER GRAHAM and : | CIVIL NO. 3:03 CV 990 (AWT) |
| JOSE CUEVAS : | |
| : | |
| Plaintiffs, : | |
| : | |
| V. : | |
| : | |
| FIRELINE, INC. : | |
| : | |
| Defendant. : | JUNE 15, 2004 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to *Fed.R.Civ.P.* 56, the defendant, Fireline, Inc. ("Defendant" or "Fireline"), through its undersigned counsel, hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment.

**I.     INTRODUCTION**

There being no genuine issue of material fact as to the Defendant's liability in this matter, summary judgment should enter. Connecticut case law is clear that in order for a plaintiff to establish liability under the Connecticut Product Liability Act, Conn. Gen. Stat. § 52-572m et seq., (the "CPLA"), *the plaintiff must establish causation* through expert testimony. In the case at bar, Plaintiffs, Jose Cuevas ("Cuevas") and Alexander Graham ("Graham") (collectively "Plaintiffs"), have utterly failed to proffer any expert testimony pertaining to causation or liability with respect to the alleged deficiencies in the pour cup at issue, the basis for Plaintiffs'

cause of action against the Defendant. More tellingly, Plaintiffs' only disclosed "liability expert," Raymond J. Erikson ("Erikson"), specifically testified at his deposition that he ***cannot state at all, let alone with any degree of scientific certainty, that the alleged defect in the pour cup caused the incident***. See Deposition ("Dep.") Transcript ("Tr.") of Raymond J. Erikson, dated May 27, 2004, at 128-129, attached hereto as Exhibit ("Exh.") A. In fact, Erikson's opinion is expressly limited to whether there was a defect in the pour cup, not whether said alleged defect was a proximate cause of the incident. See Dep. Tr. Of Erikson at 105 – 108. Consequently, as Plaintiffs' only liability expert cannot establish causation, a required element of Plaintiffs' case under the CPLA, there is no genuine issue of material fact as to liability, and thus, summary judgment should enter in the Defendant's favor.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This is a product liability action arising from an incident which allegedly occurred at Ansonia Copper & Brass ("AC&B") on June 3, 2000. AC&B is a foundry, located in Ansonia, Connecticut. AC&B manufactures wire and rods. As part of this process, metal billets, from which the wire and rods are cut, are manufactured by casters at various casting stations.[1]

At the time of the incident, Cuevas was a caster, operating Station No. 21.[2] He was in the middle of the casting process, known as a "pour," when he experienced a flash explosion of steam, allegedly caused by the contact of molten metal and water. The pour process involves the

---

[1] By way of illustration, a billet is a long, solid, metal cylinder, which when completed, looks like a small, metal telephone pole.
[2] Graham was Cuevas' supervisor.

pouring of molten metal (melted in a furnace by the caster at the beginning of the pour process) into certain molds, which form the shape of the billets. The molten metal is poured through certain fused silica pour cups, manufactured by Fireline, which then distribute the molten metal through four holes in the bottom of the cups, so that the metal flows up against the walls of the molds, to create the billets. Each pour involves two cups, two molds, and results in two billets. As the molds are formed, they are gradually lowered into cooling tanks, which contain water, and which act to cool the molten metal, thereby resulting in the hardening of the metal into the appropriate shape.

Essentially, Plaintiffs allege that during the pour at issue, the bottom portion of one of the cups (the south cup) broke off, thereby causing an improper distribution of the molten metal, which ultimately caused the south billet to swell and break, causing the molten metal to come into direct contact with the water in the cooling tank. As all casters know, when molten metal and water come into contact, a flash explosion occurs. See Depositions of Cuevas and Graham at pp. 61-62 and 71 respectively, attached hereto as Exhibit B.

Plaintiffs commenced this suit in Connecticut Superior Court by way of a Complaint, dated May 19, 2003. On June 4, 2003, the Defendant removed this action to the United States District Court for the District of Connecticut, pursuant to 28 U.S.C. §1441(a). Plaintiffs' *single* cause of action against Fireline sounds in a purported violation of the Connecticut Products Liability Act, Conn. Gen. Stat. § 52-572m et seq. ("CPLA") in that the cup sold by Defendant was allegedly defective and/or unreasonably dangerous to the Plaintiffs and that such alleged

defect caused Plaintiffs' injuries.  See Complaint, ¶¶ 13-24.  In other words, Plaintiffs claim that as a direct and proximate result of the breaking of the cup, they were injured.  See Complaint, ¶¶ 13-24.[3]

On or about June 4, 2003, Defendant filed its Answer and Affirmative Defenses ("Answer & Affirmative Defenses") to Plaintiffs' Complaint.  In its Answer and Affirmative Defenses, Fireline denied any and all alleged liability.[4]

### III.  THE TESTIMONY OF RAYMOND J. ERIKSON

Raymond J. Erikson, Plaintiffs' *only* disclosed liability expert in this matter, has testified under oath, at his deposition, that he is unable to testify as to the proximate cause of the alleged incident.  See Dep. Tr. of Erikson, at 128-129.[5]  Specifically, he has testified as follows:

> *Q:  Mr. Erikson, do you have an opinion as to whether or not the incident giving rise to the lawsuit that we're here on was a direct and proximate result of the pour cup breaking?*
>
> *A:  No, I do not.[6]*

---

[3] Plaintiffs further allege failure to warn, inadequate warnings, misrepresentation as to the safety of the product, failure to disclose the dangerous propensities of the product, failure to adequately test the product, and breach of certain implied and express warranties.  There has been no expert testimony offered as to these allegations.

[4] Defendant also asserted the following five affirmative defenses: (1) Plaintiffs' Complaint fails to state a claim upon which relief may be granted; (2) any damages purportedly suffered by Plaintiffs were caused by the negligence or other culpable conduct of third parties over which Fireline had no control, and with whom it had no relationship; (3) any damages Plaintiffs claim to have suffered were caused by the improper use and operation of the product or by the misuse of the product; (4) any damages Plaintiffs claim to have suffered were caused by the alteration, modification, and change of the product by Plaintiffs or a third party, and finally that (5) any damages Plaintiffs claim to have suffered were caused, in whole or in part, by their own negligence.

[5] Defendant has also filed a Motion to Preclude Plaintiffs from using Erikson as an expert in this matter, based upon his lack of qualifications and opinions in this matter.

[6] This testimony is especially significant given the allegation that "[a]s a direct and proximate result of the breaking of the casting cup, the Plaintiff[s] suffered numerous and painful physical injuries. . . ."  See Complaint, ¶¶ 15, 20. Failure to prove this essential allegation is the death knoll to Plaintiffs' products liability complaint.

(emphasis added).  Dep. Tr. of Erikson, at pp. 128 – 129.

In fact, Erikson was not even asked to render an opinion as to proximate cause.  He testified as follows:

> *Q:   My question is very simple.  You were never asked to determine whether or not a broken pour cup was a proximate cause of the plaintiff's injuries; is that correct?*
>
> *A:   That's correct.*

(emphasis added).  Dep. Tr. of Erikson, at pp. 105 – 108.

Instead, Erikson has presented Defendant and the Court with a laundry list of seven *possible* causes of this incident.  He testified as follows:

> Q:   Let's go back to your report, and you can open page 3 of that report, which is your analysis.  And on page 3, the analysis starts off with this statement, "There are a number of ways a direct, hyphen, chill, paren., DC, close paren., billet casting operation can go awry."
>
> And I take it what you were trying to do was lay out alternative causes for what happened to the plaintiffs in this case?
>
> A:   Yeah.  These are some of the ways that [I] saw that you could have the results that were observed develop.

Dep. Tr. of Erikson, at pp. 81-82; see also Engineer's Report, attached hereto as Exhibit C.

Erikson admits that he does not know which, if any, of these possible scenarios actually caused the alleged incident.  He even testified that despite having authored his "Engineer's Report," and being disclosed as an expert witness in this case, he is merely in the initial stages of

his investigation.[7]  Plaintiff's counsel has not authorized Erikson to perform any further analysis. See Dep. Tr. Of Erikson, at 102.

### IV. LAW & ARGUMENT

As demonstrated below, summary judgment in the instant case should enter as there is no genuine issue of material fact as to Defendant's liability, and hence, judgment as a matter of law is appropriate.  Connecticut law is clear that in order for a plaintiff to establish liability pursuant to Conn. Gen. Stat. § 52-572m et seq., the plaintiff must establish, through expert testimony, a causal link between the defendant's conduct and the injuries and damages alleged.  In the case at bar, the Plaintiffs' *only* liability expert has specifically testified that he cannot state that the alleged defect in the pour cup caused the incident.  If he were to try to do so, he would admittedly be "guessing."  Plaintiff has presented *no* other testimony or evidence establishing causation or any causal link in this case.[8]  Accordingly, summary judgment should enter.

#### A. Standard of Review

Summary judgment is proper only where there is no genuine issue of material fact to be tried on a matter, and the moving party is entitled to summary judgment as a matter of law. *Fed.*

---

[7] Erikson testified as follows:
> Q:  Would it be fair to say that you would consider yourself to be at the initial phases of this investigation or the early stages?
> A:  That would be fair to say.

Dep. Tr. of Erikson, at pp. 102.

[8] As is stated in Defendant's Motion to Preclude, Erikson should be precluded from performing any further testing in this case, as Plaintiffs' deadline for disclosing a final expert opinion, pursuant to *Fed.R.Civ.P.* 26(a)(2)(B) was January 29, 2004.  Defendant has invested a great deal of time and expense to learn and fully understand Erikson's opinion, and to allow further analysis by Erikson would mean that Defendant would have to incur additional expenses, including re-deposing Erikson, which would be highly prejudicial to Defendant.

*R. Civ. P. 56(c)*; *Donahue v. Windsor Locks Board of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir. 1987). In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 91 L.Ed. 2d. 202, 106 S. Ct. 2505 (1986*).* "The genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside of the pleadings, from which material facts alleged in the pleadings can be warrantably inferred*."* *United Oil Co. v. Urban Redevelopment Comm'n,* 158 Conn. 364, 378-79, 260 A.2d 596 (1969). Indeed, a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Zabelle v. Coratolo*, 816 F. Supp. 115, 119 (D. Conn. 1993); see also *Hildabrand v. Diffeo P'ship, Inc.,* 89 F. Supp. 202, 205 (D. Conn. 2000) ("[i]f a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate").

    **B.**    **Summary Judgment in the Instant Case Should Enter as There is no Issue of Material Fact as to the Defendant's Liability.**

        **1.**    **Connecticut Law Requires The Presentation of Expert Testimony on the Issue of Causation Pursuant to the Product Liability Act.**

It is axiomatic that under Connecticut's product liability statute, "the plaintiff must plead and prove that the product was defective ***and that the defect was the proximate cause of the plaintiff's injuries***." Haesche v. Kissner, 229 Conn. 213, 218 (1994), quoting Wierzbicki v. W.W. Grainger, Inc., 20 Conn. App. 332, 334 (1989).

In Gold v. Dalkon Shield Claimants Trust, 1998 U.S. Dist. LEXIS 22413 at *5 (D. Conn. 1998)(Burns, J.)(attached hereto as Exh. D), the plaintiff brought suit against the defendant pursuant to the Connecticut Product Liability Act based on injuries she allegedly received in using the Dalkon Shield, an allegedly defective product manufactured and sold by the defendant. See id., at *6. The defendant subsequently moved for summary judgment based on the plaintiff's failure to establish, through expert testimony, a causal link between any claimed defect in the Dalkon Shield and her alleged injuries. Id. at *7. The District Court for the District of Connecticut stated that the dispositive issue on a motion for summary judgment pursuant to the CPLA was whether "a reasonable jury could find that the plaintiff has met her burden of proof as to causation without the benefit of expert testimony." Id. at *8. The court held that expert testimony *is required* to establish causation under the CPLA, and accordingly, granted summary judgment in the defendant's favor. It provided:

> To meet her burden of proof as to cause in fact, the plaintiff must establish a causal link between a defect in the Dalkon Shield and her claimed injuries. Specifically, *she must demonstrate that it is more probable than not that a defective tail string in the Dalkon Shield caused her to contract [her illness]* which then led to her infertility. The plaintiff cannot make this showing from articles and clinical studies which conclude that a defective tail string in the Dalkon Shield tends to cause PID which often leads to infertility. *She must prove by a preponderance of the evidence that this series of events that she alleges actually occurred in her case. The Court finds that expert medical testimony is the sole means by which she can carry this burden of proof*.

Id. at **9-10 (emphases added).

The court went even further by stating:

> Even assuming that the plaintiff can show that the Dalkon Shield was defective and that she suffered the injuries she claims, ***without a proffer of expert medical testimony as to causation to link the defect to the injury, a reasonable jury could not find that the plaintiff has proved that the defect caused her specific injuries. She, therefore, fails to demonstrate the existence of a triable issue of fact to go to a jury. Given the absence of evidence to prove the plaintiff's case, the defendant trust is entitled to summary judgment***.

(citations omitted). Id. at *10; see also Hunter v. Mazda of Milford, No. CV 980350686S, 1999 Conn. Super. LEXIS 695, at *9 (Conn. Super. Ct. Mar. 2, 1999) (Skolnick, J.) (stating that "evidence of a malfunction itself is not enough to sustain a claim under the Products Liability Act without showing that the defect existed at the time of sale.") (attached hereto as Exh. E); Aspiazu v. Orgera, 535 A.2d 338, 342 (Conn. 1987) (finding that under certain circumstances, expert testimony is required); Fane v. Zimmer, 927 F.2d 124, 131 (2d Cir. 1991) (affirming trial court's directed verdict for defendant in a product liability case because, absent medical testimony on the issue of causation, the plaintiffs could not prove the elements of strict liability or negligence);[9] see, e.g., Fitzgerald v. Manning, 679 F.2d 341, 351 (4th Cir. 1982) (finding that "only if the opinion evidence on causation, as offered by the plaintiff, rises to the level of a reasonable degree of medical certainty that it was more likely that the defendant's negligence was

---

[9] The Fane case concerned an allegedly defective hip replacement device. Similar to the case at bar, the doctor testified that he could not with any certainty establish cause and effect in the case at hand– whether the fractured hip or the allegedly defective device actually caused the alleged injuries. The court reasoned that if the plaintiff's own physician "felt incapable of making an assessment as to what broke first, it seems clear the question was beyond the purview of the ordinary person. Absent competent medical expert testimony on the issue of causation, the Fanes could not prove the elements of a cause of action based in strict products liability or negligence." Fane, 927 F.2d at 131-32.

the cause than any other cause, is there sufficient evidence on causation to permit jury submission on causation.").

The District Court, in Gold, further found that "*expert testimony is required when the factual content of the underlying issues is not found within the laypersons' common knowledge and experience*." (emphasis added). Gold, 1998 U.S. Dist. LEXIS 22413, at *8.

> 2. **Absent a Proffer of Expert Liability Testimony Causally Linking the Alleged Defect in the Fireline Pour Cup to the Plaintiffs' Claimed Injuries, a Reasonable Finder of Fact Could not Determine that the Plaintiffs have Established, by a Preponderance of the Evidence, that the claimed Defect Caused their Injuries; Accordingly, Defendant is Entitled to Judgment as a Matter of Law.**

As outlined above, Plaintiffs' *only* liability "expert," has testified under oath that he cannot state that a defect in the Fireline pour cup caused the alleged injuries in this case. See Dep. Tr. of Erikson, at 128-129. Erikson's only opinion is that the fused silica used in the Fireline pour cups is the wrong material for this particular application.[10]

The whole of Erikson's deposition testimony affirmatively demonstrates that, if called to provide an "expert" liability opinion at trial, Erikson would be unable to testify as to the proximate cause of this incident. See testimony cited *supra*.

---

[10] Erikson does not even know for sure whether the cup actually failed. He was told by Plaintiffs' counsel that the cup failed. See Dep. Tr. Of Erikson, at 93-94. However, the cup is nowhere to be found, and neither Plaintiff saw the cup fail. See Dep. Tr. Of Cuevas, at 60-61; Dep. Tr. Of Graham at 63-64. In fact, Erikson admitted that he has no evidence of a cup failure. See Dep. Tr. Or Erikson, at 93-94. Erikson was simply presented with a scenario that there had been a cup failure and asked to determine why it may have broken. See Dep. Tr. Or Erikson at 64-65, 93-94, and 104-105.

Simply put, to meet their burden of proof as to cause in fact, Plaintiffs must establish a causal link between a defect in the Fireline pour cup and their claimed injuries. Specifically, *they must demonstrate that it is more probable than not that a defect in the pour cup caused the accident and Plaintiffs' alleged injuries*. By Erikson's own sworn admissions, Plaintiffs cannot make this showing based on his "expert" testimony. Absent expert testimony establishing a causal link between the claimed defect and the Plaintiffs' injuries, a reasonable finder of fact could not conclude that Defendant is liable pursuant to the CPLA. Accordingly, there is no genuine issue of material fact as to the Defendant's liability in this case, and thus, judgment should enter as a matter of law.

## V. CONCLUSION

WHEREFORE, and based on the foregoing reasons, this Court should enter an order granting summary judgment to the Defendant, Fireline, Inc.

THE DEFENDANT
FIRELINE, INC.


By   /s/ Charles F. Gfeller
Mark B. Seiger, Esq.
Fed. Bar No. ct 05580
Charles F. Gfeller, Esq.
Fed. Bar No. ct 18119
EDWARDS & ANGELL, LLP
90 State House Square
Hartford, Connecticut 06103
(860) 525-5065
Telecopy (860) 527-4198

## **CERTIFICATION**

      This is to certify that on the 15th day of June, 2004, a copy of the foregoing has been mailed via First Class U.S. Mail, postage pre-paid, to:

Thomas A. Virgulto, Esq.
Mongillo, Insler & Virgulto, P.C.
26 Elm Street
New Haven, CT  06510

                                            /s/Charles F. Gfeller
                                              Charles F. Gfeller