LEXSEE 1998 U.S. DIST. LEXIS 22413

**LYNN GOLD v. DALKON SHIELD CLAIMANTS TRUST**

**No. B-82-383 (EBB)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*1998 U.S. Dist. LEXIS 22413*

**June 15, 1998, Decided
June 15, 1998, Filed**

**DISPOSITION:** [*1] Defendant's Motion for Summary Judgment GRANTED.

**LexisNexis(R) Headnotes**

**COUNSEL:** LYNN GOLD, plaintiff, Pro se, Southport, CT.

For DALKON SHEILD CLAIMANTS TRUST, defendant: R. Cornelius Danaher, Jr., Nancy K. Roux, Danaher, Tedford, Lagnese & Neal, Hartford, CT.

For DALKON SHEILD CLAIMANTS TRUST, defendant: Paul F. Strain, Elizabeth C. Honeywell, Venable, Baetjer & Howard, Baltimore, MD.

**JUDGES:** ELLEN BREE BURNS, SENIOR JUDGE, UNITED STATES DISTRICT COURT.

**OPINIONBY:** ELLEN BREE BURNS

**OPINION:**

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In 1982, the plaintiff, Lynn Gold, brought an action against A.H. Robins Company, alleging personal injury caused by the Dalkon Shield, an intrauterine contraceptive device ("IUD"), designed, manufactured, and sold by the defendant company. After A.H. Robins Company declared bankruptcy, a Plan of Reorganization ("Plan") was created in 1988 that established the Dalkon Shield Claimants' Trust ("Trust") to handle the many claims filed against the company in relation to the Dalkon Shield. Ms. Gold attempted to resolve her claim through the settlement procedure detailed in the Plan. When this process failed to resolve the matter to her satisfaction, the plaintiff was certified [*2] on December 13, 1996 by the United States Bankruptcy Court for the Eastern District of Virginia to reopen her previous litigation, filed in this court. On January 30, 1998, the plaintiff filed her second amended complaint in the reopened litigation. Now the defendant moves the Court for summary judgment pursuant to *FED.R.CIV.P. 56*. For the reasons set forth below, the defendant's motion (Doc. No. 68) is **GRANTED.**

### I. Statement of Relevant Facts

The Court summarizes only those facts believed necessary to an understanding of the issues in, and the decision rendered on, this motion. The facts are culled from the affidavits, depositions and other exhibits submitted by both parties. Unless otherwise indicated, these facts are not in dispute between the parties.

The plaintiff's medical records show that she had a Lippes Loop IUD inserted in September, 1970. This IUD was later removed due to partial expulsion from the uterus. On May 3, 1972 a Dalkon Shield IUD was inserted into the plaintiff's uterus. The next month the plaintiff complained of heavy menses and cramping. The Dalkon Shield was checked and evaluated as "O.K." On January 31, 1978 the plaintiff had a pelvic exam [*3] which led to a diagnosis of endometriosis. On February 8, 1979 the Dalkon Shield was removed. Throughout the time the Dalkon Shield was in place the plaintiff's medical records reflect that she intermittently complained of abdominal discomfort. n1

Case 3:03-cv-00990-AWT    Document 25-5    Filed 06/15/2004    Page 2 of 3

Page 2
1998 U.S. Dist. LEXIS 22413, *

n1 The plaintiff also testified in her deposition that she experienced a recurrent fever beginning in the late fall of 1978 and proceeding into January of 1979. In addition, she recounts having experienced an episode of acute abdominal pain which probably coincided with the fever. Pl.'s Dep. at 73.

On July 8, 1980, Dr. Theodore Reed performed a hysterosalpingogram on the plaintiff. This procedure involves injection of a radiopaque material after which the fallopian tubes and uterus can be visualized by roentgenography (x-ray). The radiologist concluded that the plaintiff suffered from bilateral hydrosalpinx, i.e. distension of the fallopian tubes by clear fluid. The same procedure was performed by Dr. Reed again on April 2, 1981. A different radiologist concluded that [*4] the plaintiff had persistent hydrosalpinx "presumably due to past PID" (pelvic inflammatory disease).

In 1994, the plaintiff had blood samples sent by the Stamford Department of Health to the Centers for Disease Control to rule out chlamydia as a cause of the presumed PID. Her clinical diagnosis on the blood test order forms is listed as infertility. The blood tests were negative for chlamydia.

## II. Legal Analysis

### A. The Standard of Review

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *FED.R.CIV.P. 56(c)*; *Anderson v. Liberty Lobby, 477 U.S. 242, 256, 106 S. Ct. 2505, 2518, 91 L. Ed. 2d 202*, (1986); *Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995)*. A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact.'" *Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993)*(citation omitted). "A dispute [*5] regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.)*, cert. denied, *506 U.S. 965, 113 S. Ct. 440, 121 L. Ed. 2d 359*, (1992) (quoting *Anderson, supra, 477 U.S. at 248*).

After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265*, (1986). As a corollary, the moving party is entitled to summary judgment if it can show that there is an absence of evidence to support the nonmoving party's case. *Id. at 325*.

The Court is mandated to resolve "all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich, supra, 963 F.2d at 523*. Hence, "only when reasonable minds could not differ as to the import of the evidence is summary judgment proper. [*6] " *Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.)*, cert. denied, *502 U.S. 849, 112 S. Ct. 152, 116 L. Ed. 2d 117 (1991)*. See also *Suburban v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992)*.

### B. The Connecticut Product Liability Act Claim

The Court has jurisdiction over this action pursuant to *18 U.S.C. § 1332* (conferring diversity jurisdiction). Therefore, the plaintiff's cause of action lies under Connecticut law, specifically, the Connecticut Product Liability Act ("CPLA"), *Conn. Gen. Stat. § 52-572m et seq.* She claims damages based on the theories of strict liability in tort, negligence, failure to warn, breach of warranty, and fraudulent misrepresentation. n2 Because each of these theories requires the plaintiff to prove causation, the following analysis applies to the plaintiff's entire cause of action.

n2 The plaintiff also alleges "civil conspiracy" in her Second Amended Complaint. Because no such tort lies under the CPLA, either explicitly, see *Conn. Gen. Stat. § 52-572m(b)*, or implicitly under the common law, the Court need not address this allegation.

[*7]

As just intimated, the deficiency in the plaintiff's case is found in her inability to meet her burden of proof as to causation. Under the CPLA a plaintiff must prove that the product was defective and that the defect proximately caused her injuries. *Sharp v. Wyatt, Inc., 31 Conn. App. 824, 627 A.2d 1347, 1352 (Conn. App. 1993)*. A requisite element of proximate cause is "cause in fact." See e.g. *Fitzgerald v. Manning, 679 F.2d 341, 348 (4th Cir. 1982)*(defining proximate cause in a medical malpractice action); *Sharp, 627 A.2d at 1354* (explicating the requirements for proximate cause under *Conn. Gen. Stat. § 52-572q(c)*).

The defendant maintains that the plaintiff cannot demonstrate cause in fact because she has failed to retain an expert to testify to the causal link between any defects in the Dalkon Shield and her injuries. Def.'s Mem. in Supp. of Mot. for Summ. J. at 5. The plaintiff argues that she will prove causation with the testimony of a court-

Case 3:03-cv-00990-AWT    Document 25-5    Filed 06/15/2004    Page 3 of 3

Page 3
1998 U.S. Dist. LEXIS 22413, *

appointed expert, written reports, and affidavits. Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 13.

The Court has recently declined to appoint an independent expert as requested by the [*8] plaintiff. n3 The dispositive issue for the resolution of this motion for summary judgment is, therefore, whether a reasonable jury could find that the plaintiff has met her burden of proof as to causation without the benefit of expert testimony.

n3 See Ruling on Plaintiff's Petition to have the Court Appoint Expert Witnesses, dated June 3, 1998. The Court concluded that the plaintiff failed to make a strong enough showing that the issues involved were so highly technical that it is necessary to interfere with the adversarial process by appointing an independent expert for which the defendant would have to bear the expense. That decision however, does not contradict the Court's finding in this Ruling that a jury of laymen do need expert guidance in determining causation. The Court simply places the burden of proving the plaintiff's case on the plaintiff, where it properly belongs in our adversarial system.

Expert testimony is required when the factual content of the underlying issues is not found within the [*9] laypersons' common knowledge and experience. *Fane v. Zimmer, 927 F.2d 124, 131 (2d Cir. 1991)* (affirming the trial court's directed verdict for the defendant in a product liability case because, absent expert medical testimony on the issue of causation, the plaintiffs could not prove the elements of strict liability or negligence); *In re Flanagan, 240 Conn. 157, 690 A.2d 865, 876 (Conn. 1997)*(applying this standard in the context of an alleged ethical violation by a state court judge).

Medical evidence relating to causes of injury to the human body is not normally considered to dwell within the common knowledge of a layperson. *Connecticut v. McClary, 207 Conn. 233, 541 A.2d 96, 100 (Conn. 1988)* (citing *Collette v. Collette, 177 Conn. 465, 418 A.2d 891, 894 (Conn. 1979)*.

To meet her burden of proof as to cause in fact, the plaintiff must establish a causal link between a defect in the Dalkon Shield and her claimed injuries. Specifically, she must demonstrate that it is more probable than not that a defective tail string in the Dalkon Shield caused her to contract PID which then led to her infertility. The plaintiff [*10] cannot make this showing from articles and clinical studies which conclude that a defective tail string in the Dalkon Shield tends to cause PID which often leads to infertility. She must prove by a preponderance of the evidence that this series of events that she alleges actually occurred in her case. The Court finds that expert medical testimony is the sole means by which she can carry this burden of proof.

Even assuming that the plaintiff can show that the Dalkon Shield was defective and that she suffered the injuries she claims, without a proffer of expert medical testimony as to causation to link the defect to the injury, a reasonable jury could not find that the plaintiff has proved that the defect caused her specific injuries. She, therefore, fails to demonstrate the existence of a triable issue of fact to go to a jury. Given the absence of evidence to prove the plaintiff's case, the defendant trust is entitled to summary judgment. *Cavallo v. Star Enterprise, 892 F. Supp. 756, 774 (E.D. Va. 1995)*(granting summary judgment for defendant in a toxic tort case when the plaintiffs failed to offer admissible expert testimony in opposition to defendant's summary judgment [*11] motion), aff'd, *100 F.3d 1150 (4th Cir. 1996)*.

## II. Conclusion

For the foregoing reasons, the defendant's Motion for Summary Judgment (Doc. No. 68) is **GRANTED.**

SO ORDERED

ELLEN BREE BURNS, SENIOR JUDGE

UNITED STATES DISTRICT COURT

Dated at New Haven, Connecticut, this 15th day of June, 1998.