UNITED STATES DISCTRICT COURT
DISCTRICT OF CONNECTICUT

FILED

| | |
|---|---|
| ALEXANDER GRAHAM and JOSE CUEVAS,<br>　　　　　Plaintiffs | CIVIL NO. 3:03 CV990(AWT)<br>2004 JUN 25 A 11: 16<br>U.S. DISTRICT COURT<br>HARTFORD, CT. |
| Vs. | |
| FIRELINE, INC.,<br>　　　　　Defendant | JUNE 22, 2004 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OBJECTION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.   **PRELIMINARY STATEMENT:**

The Plaintiffs herein, ALEXANDER GRAHAM and JOSE CUEVAS, hereby object to the granting of the Defendant's Motion for Summary Judgment, dated June 15, 2004. The Defendant premises its Motion on the basis that the Plaintiff cannot establish causation through expert testimony. The Defendant also filed a Motion to Preclude Proffered Expert Testimony of Raymond J. Erikson on the same date, June 15, 2004. The Plaintiffs have filed on this same date, an Objection to the Defendant's Motion to Preclude, a copy of which is attached hereto as Exhibit A. This Honorable Court's position, with regards to Defendant's other such Motion, will have a significant impact upon the Court's review of the subject Motion for Summary Judgement. Therefore, the Plaintiffs respectfully request that this Honorable Court consider both of Defendant's Motions, dated June 15, 2004, as well as the Plaintiff's Objections thereto, together, in the interests of clarity and judicial economy

II.   **BACKGROUND:**

The case at hand involves an incident at the Ansonia Copper & Brass foundry in Ansonia, Connecticut, which occurred on June 3, 2000. On said date, the Plaintiff, JOSE CUEVAS, was engaged in the casting process at Station No. 21, conducting a "pour." This is the process, by which molten metal is poured, by the caster, from the furnace into certain molds, for the purpose of forming billets. The molten metal is poured into a "running box," which channels the metal towards two (2) fused silica "pouring cups" as manufactured by the Defendant. These "pouring cups" each contain four (4) holes, which direct the flow of the poured metal towards the exterior of the mold. As the molds are formed, they are lowered into water-filled cooling tanks, which serve to cool and solidify the billets.

It is the contention of the Plaintiffs herein that one of the "pouring cups" manufactured by the Defendant, failed, thereby allowing molten metal to mass, undirected, in the center of the forming billet. It is the argument of these Plaintiffs that the base of the "pouring cup" broke, thereby preventing the distribution of molten metal to the sides of the mold. This improper distribution of molten metal caused one such billet to rupture, or leak, allowing molten metal to leave the billet and enter the cooling tank. When the molten metal came in contact with the cold water, a flash explosion of steam occurred. In the process, the Plaintiffs (caster, JOSE CUEVAS, and supervisor, ALEXANDER GRAHAM) suffered considerable burns across much of their respective bodies.

Subsequent to the incidents of June 3, 2000, an investigation into the occurrence was conducted by the U.S. Department of Labor, Occupational Safety and Health Administration (hereinafter referred to as "OSHA"). An inspection of the facility was

conducted by OSHA on June 5, 2000. This inspection is memorialized in a twelve (12) page report which is annexed hereto as <u>Exhibit B</u>. It should be noted that OSHA reported, in section (g) of such report, entitled "walkaround", and located on then 5th page of said report:

> Only the top portion of the cups were present in the running box. The top portion of the cup in the north underside of the running box matched a bottom cup portion found by the employer on 6/3/00. There were no cracks around the holes of the 1 cup found. The bottom cup portion for the south side of the running box was not found. ***This was of note since the cups directed the metal towards the mold wall to form the billet wall. If the cup did not direct the metal to the mold wall but rather allowed the metal to collect in the middle, the sump of billet may have been too long.*** [Emphasis added]

The Plaintiff, JOSE CUEVAS, in his deposition of May 25, 2004, testified that, while he did not see the broken cup, he was informed by his union president that such event did indeed occur. (Copies of his deposition transcript are attached hereto as <u>Exhibit C</u>):

> Q:  Why do you think that the cup broke?
>
> A:  I think that the cup broke because instead of the metal being dispersed to cool off, it just – it just shot right inside – inside the billet, straight down, causing it to swell up and burst.
>
> Q:  You're guessing that's what happened? You don't have any –
>
> A:  No.
>
> Q:  You can't prove that's what happened, correct, you are guessing?
>
> A:  When they inspected the accident, the president – the union president, he told me that the right cup broke, because it happened so fast, I didn't realize.
>
> <u>See</u> Dep. Tr. Of Cuevas, at pp.60-61.

Plaintiffs commenced this cause of action, a violation of the Connecticut Products Liability Act, C.G.S. Section 52-572m, et seq., against the Defendant, FIRELINE, INC., alleging that the cup manufactured and sold by the Defendant was defective and/or unreasonably dangerous, and that this factor led to the steam explosion on June 3, 2000. Pursuant to C.G.S. Section 52-572m, a products liability claim is defined as including all claims for damages caused by the "manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product."

III.   **ARGUMENT:**

   **a) Standard of Review:**

The standard of review in a Motion for Summary Judgment, pursuant to Fed.R.Civ.P. 56 is clearly set forth in Defendants' Memorandum. It shall only be granted when there are no genuine issues of material fact, and therefore, the moving party is entitled to judgement as a matter of law. In determining whether there are material factual issues, the Court must resolve all ambiguities and draw all reasonable inferences against the moving Party. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

A Court must grant Summary Judgment 'if the pleadings, depositions, answers to Interrogatories, and Admissions on file, together with Affidavits, if any, show that there

is no genuine issue of material fact." Miner v City of Glens Falls, 999 F.2d 665, 661 (2d Circ. 1993).

### b) Products Liability:

"In a products liability action, the Plaintiff must plead and prove that the product was the proximate cause of the Plaintiff's injuries." Wierzbicki v W.W. Grainger, Inc., 20 Conn. App. 332, 334 (1989), citing Zichichi v Middlesex Memorial Hospital, 204 Conn. 399, 403, 528 A.2d 805 (1987). In Wierzbicki, the Plaintiff provided expert testimony from an industrial engineer as to design, as well as expert medical testimony relative to the extent of Plaintiff's injuries. Nevertheless, the Court found that "[w]hether such evidence is sufficient is a question for the"[trier of fact]. Wierzbicki, 20 Conn. App. at 334. In such case, the Jury accepted Plaintiff's evidence and ruled in his favor.

Expert testimony will be required when the factual content of the underlying issues is not found within the laypersons' common knowledge and experience. Fane v Zimmer, 927 F,2d 124, 131 (2d Cur,1991). In the present matter, Raymond J. Erikson was disclosed as Plaintiff's expert to address liability.

Mr. Erikson's mandate, and the subject matter of his inquiry and investigation, was the "cause of the failure of the ceramic pouring cup, which resulted in a billet leak which thereafter caused an explosion of steam and molten metal which ultimately injured the Plaintiff's." See Exhibit D, Disclosure of Expert, dated January 29, 2004, attached hereto. Mr. Erikson's investigation concluded with the findings set forth in his report of November 3, 2003.

It is the Plaintiff's contention that, as a result of the failure of the ceramic pouring cup, molten metal was not properly distributed into the mold. As a direct result of this insufficient distribution, molten metal settled into the mold in an inappropriate fashion. Thereafter, the billet began to leak molten metal into the cold water of the cooling tank. When this metal made contact with the cold water, a flash steam explosion resulted, the effect of which was the burns sustained by Messrs. GRAHAM and CUEVAS.

To that end, the Plaintiff's retained the services of Raymond J. Erikson, M.Sc.. Mr. Erikson was not charged with an examination into the properties of fused silica, as the Defendant has argued. Rather, Mr. Erikson's mandate was simple and clear, as demonstrated by his deposition testimony, annexed hereto as Exhibit E:

Q:    Mr. Erikson, when you were retained to perform the services that we're here discussing today, what was the mandate given to you?

A:    To examine the exemplar pouring cups provided and determine if they could break in service.

See Dep. Tr. Of Erikson, at pp.129.

Raymond J. Erikson's sole function was to examine and evaluate the Defendant's pouring cup, to determine whether they could break in service. His task was to determine if the subject pouring cup was suitable for its part in the downcasting operation at Ansonia Copper & Brass.

If the Plaintiff can prove that the pouring cup failed, due to a design defect, or an inappropriate use of same, and that this factor led to the leak of the south billet, the Plaintiff's will have taken large steps towards establishing liability. There is little evidence to dispute that on June 3, 2000, the south billet at casting station No. 21 leaked

molten metal into the cooling tank. To quote the Defendant from Page 3 of its own Memorandum, "All casters know, when molten metal and water com into contact, a flash explosion occurs." Such an explosion did in fact occur. Whether or not a broken pour cup was a proximate cause of the Plaintiffs' injuries is not the province of this expert, as the Defendant would suggest. The cause of physical injuries lie within the expertise of the medical experts so disclosed.

The Plaintiffs' expert examined the thermal properties of an exemplar pouring cup, in order to determine whether such an item could withstand the thermal stresses of the downcasting operation. He indicated that further testing would be necessary to reinforce these conclusions.

The Plaintiffs' expert conducted his experimentation, according to sound math and science, and reached a conclusion that the subject pouring cup was not suitable for the intended purposes.

Mr. Erikson goes on to state on Pages 3-4 of his Engineer's Report (Exhibit F) that: "the distribution of molten metal in the mold would change significantly, since four separate streams of metal previously directed to the sides would become a single large stream directed to the middle of the mold. With less of the molten metal exposed to the cooling sidewalls of the mold, more of the metal in the mold could remain above the freezing point. This could conceivably lead to excessive heat buildup in the billet, and result in the observed billet leakage." In his deposition (Dep. Tr. Of Erikson, at pp.143, attached hereto as Exhibit E), the expert replies that "[t]he purpose of additional testing and analysis would be to reduce the uncertainty associated with the pouring cup thermal

properties and the pouring cup environment." It is anticipated that the further testing suggested by Mr. Erikson will confirm the conclusions made in his Engineer's Report.

IV.   **CONCLUSION:**

The opinions of Raymond J. Erikson to date, as well as those conclusions reached in further testing are indeed reliable and relevant to the case at issue. They will serve to assist the trier of fact in understanding the evidence offered by the Plaintiffs.

The inclusion of Mr. Erikson's testimony raises material issues of fact as to causation and liability which must be addressed by the trier of fact.

THE PLAINTIFFS

By _____
Thomas A. Virgulto, Esq.
Fed Bar No. ct 12058
Mongillo, Insler & Virgulto, P.C.
P.O. Box 514
New Haven, CT 06502
(203) 787-5805

**ORDER:** The foregoing Objection having been presented and heard, it is hereby

SUSTAINED / DENIED.

BY THE COURT (        , J.)

_____
Asst. Clerk / Judge

**CERTIFICATION:** I hereby certify that a copy of the foregoing was mailed, postage prepaid, to Charles F. Gfeller, Esq., Edwards & Angell, LLP, 90 State House Square, Hartford, CT 06103, on June 23, 2004.

_____
Thomas A. Virgulto