UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALEXANDER GRAHAM and<br>JOSE CUEVAS | : | CIVIL NO. 3:03 CV 990 (AWT) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| FIRELINE, INC. | : | |
| | : | |
| Defendant. | : | JULY 6, 2004 |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to *Fed.R.Civ.P.* 56, the defendant, Fireline, Inc. ("Defendant" or "Fireline"), through its undersigned counsel, hereby submits this Reply Brief in Support of its Motion for Summary Judgment.

### I.  PLAINTIFFS CANNOT PROVE THAT A DEFECT IN THE POUR CUP WAS A PROXIMATE CAUSE OF THE INCIDENT.

**A.  Plaintiffs' Expert, Raymond J. Erikson, Cannot Testify That A Defect in The Pour Cup Was a Proximate Cause of the Explosion.**

In order for Plaintiffs, Jose Cuevas ("Cuevas") and Alexander Graham ("Graham") (collectively "Plaintiffs") to prevail in this case, it is essential for them to present expert testimony demonstrating a causal nexus between the alleged defect in the pour cup and the incident at issue. See Gold v. Dalkon Shield Claimants Trust, No. B-82-383, 1998 U.S. Dist. LEXIS 22413 at *5 (D. Conn. June 15, 1998) (Burns, J.), attached to Defendant's Memorandum

of Law in Support of Motion for Summary Judgment, dated June 15, 2004 ("Memorandum"), as Exh. D.[1]

There is no disputing the fact that an explosion occurred at Ansonia Copper & Brass ("AC&B") on June 3, 2000, or that Plaintiffs were injured as a result of the explosion.[2] **The issue, which Plaintiffs are somehow overlooking, is whether the explosion was, in fact, *caused* by a defect in the pour cup.**

Plaintiffs' liability expert, Raymond J. Erikson ("Erikson"), was not even asked to reach a conclusion on this issue. He was simply asked to determine whether there was a defect in the pour cup. As is set forth in Defendant's Memorandum, Erikson has testified as follows:

> *Q:    My question is very simple. You were never asked to determine whether or not a broken pour cup was a proximate cause of the plaintiff's injuries; is that correct?*
>
> *A:    That's correct.*

(emphasis added). Dep. Tr. of Erikson, at pp. 105 – 108.[3]

In fact, as Plaintiffs point out in their Opposition, Erikson was given a "mandate," and the subject matter of his inquiry and investigation was the "cause of the failure of the ceramic pouring cup, which resulted in a billet leak and thereafter caused an explosion of steam and molten metal which ultimately injured the Plaintiff's (*sic*)." See Opposition, at Section III. b.,

---

[1] Defendant relies upon the precedent cited in its Memorandum, and for purposes of judicial economy, it does not restate herein its full analysis of said precedent. For a full analysis, please see the Memorandum.
[2] Defendant may take issue with the extent of the injuries claimed.
[3] Defendant has attached all cited portions of Erikson's deposition as Exh. A hereto.

quoting Plaintiffs' Disclosure of Expert, dated January 29, 2004.  This mandate makes a huge analytical leap and assumes that (1) the cup failed, and (2) the failure of the cup *caused* the billet to leak, which thereafter caused the explosion.  However, Erikson has specifically testified that he has assumed the cup failed[4] and that he cannot say whether said failure was a proximate cause of the explosion.[5]  Instead, Erikson has merely come up with a laundry list of seven *possible* causes of the explosion, and he is not certain which, *if any* of these causes, was, in fact, the proximate cause of this incident because he has done nothing to validate what he admits is merely a hypothesis.

He testified as follows:

> *Q:     So as you sit here today, you have nothing more than just a hypothesis that a broken cup may have brought about this injury or may have been the proximate cause of the injury?*
>
> *A:     Yes, that's a possibility.*
>
> *Q:     And there are several other possibilities?*
>
> *A:     There are other possibilities.*
>
> *Q:     Did anybody ever ask you to determine which would be the more likely possibility of the other possibilities that you've come up with?*
>
> *A:     No, I don't think so.*

---

[4] See Dep. Tr. Of Erikson at pp. 63-65.
[5] See Dep. Tr. of Erikson, at pp. 88 and 128 – 129, quoted *infra*.

(emphasis added).  Dep. Tr. of Erikson, at pp. 107. [6]

In fact, Erikson specifically testified that he <u>cannot</u> testify as to the proximate cause of this <u>incident</u>.  He testified as follows:

> *Q:  Mr. Erikson, do you have an opinion as to whether or not the <u>incident</u> giving rise to the lawsuit that we're here on was a direct and proximate result of the pour cup breaking?*
>
> *A:  No, I do not.*

(emphasis added).  Dep. Tr. of Erikson, at pp. 128 – 129.

Without expert testimony supporting the allegation that the pour cup was defective <u>and</u> that said defect was a proximate cause of the explosion, Plaintiffs cannot prevail in this case, let alone on summary judgment.  **Plaintiffs cannot prove, and have offered no evidence to prove, that a defect in the pour cup caused the billet to leak, and that this caused the explosion.**

---

[6] Erikson has presented Defendant and the Court with a laundry list of seven *possible* causes of this incident.  He testified as follows:

> Q:  Let's go back to your report, and you can open page 3 of that report, which is your analysis.  And on page 3, the analysis starts off with this statement, "There are a number of ways a direct, hyphen, chill, paren., DC, close paren., billet casting operation can go awry."
>
> And I take it what you were trying to do was lay out alternative causes for what happened to the plaintiffs in this case?
>
> A:  Yeah.  These are some of the ways that [I] saw that you could have the results that were observed develop.

Dep. Tr. of Erikson, at pp. 81-82; <u>see</u> also Engineer's Report, attached to Defendant's Memorandum as <u>Exh.</u> C.

### B.  Plaintiffs Are Unable To Take "Large Steps" Toward Establishing Liability.

In their Opposition, Plaintiffs state that "[i]f the Plaintiff (*sic*) can prove that the pouring cup failed, due to a design defect, or an inappropriate use of same, and that this factor led to the leak of the south billet, the Plaintiff's (*sic*) will have taken large steps toward establishing liability." See Opposition, at Section III. b.  To begin with, Plaintiffs' expert has put forth various hypotheses as to what *may* have caused the explosion to occur; however, even he admits that he does not know which, if any, of these possible scenarios actually caused the explosion, let alone that a defect in the pour cup was the proximate cause of the incident.  See testimony cited *supra*.

Secondly, Plaintiffs' contention that the "inappropriate use" of the cup could somehow demonstrate liability on *Defendant's* part is a concept which defies logic.  If Cuevas and/or AC&B were mis-using the product, how does this implicate liability on the part of its manufacturer – Fireline?  If anything, the misuse of the pour cup would provide support for Defendant's Second and/or Third Affirmative Defenses.[7]

---

[7] Defendant's Second Affirmative Defense states: "Any damages Plaintiffs claim to have sustained were caused, in whole or in part, by the negligence or other culpable conduct of one or more persons over which Fireline had no control and with whom it had no relationship." Defendant's Third Affirmative Defense reads as follows: "Any damages Plaintiffs claim to have sustained were caused, in whole or in part, by the improper use and operation of the product or by misuse of the product, rather than any failure to warn or any defect in the design, manufacture, testing or inspection of the product by Fireline."

### C. Plaintiff Has Offered No Evidence That A Defect in the Pour Cup Was a Proximate Cause of the Explosion.

Even if the court were to assume, for the purposes of this motion, that there was a defect in the pour cup, a point which Defendant obviously does not concede, there is absolutely no evidence that the defect *caused* the explosion! The mere fact that the OSHA report, cited in Plaintiffs' Opposition, mentions that the bottom of the pour cup was apparently broken off *after* the explosion does not, in any way, establish that the cup was broken *before* the explosion.[8] Certainly, the OSHA report does not state, or even suggest, that the explosion was *caused* by a defect in the pour cup. Moreover, the fact that Cuevas' union president supposedly told him, after the fact, that the cup broke does not establish that the cup broke *before* the explosion, that the breaking of the cup *caused* the explosion, or that there was a defect in the pour cup which caused it to break. Certainly these references, cited in Plaintiffs' Opposition, do not even put the ball in the air, let alone over the fence.[9] These assertions do not give rise to a genuine issue of *material* fact and are not sufficient to defeat summary judgment.[10]

Plaintiffs have even tried to confuse the court by arguing that their medical experts, not Erikson, will causally link the explosion to the injuries allegedly suffered by the Plaintiffs. They

---

[8] **It is important to remember that the pour cup is a ceramic, and so it should come as no surprise that it may have broken as a result of the explosion. In fact, Erikson has testified that ceramics are brittle. See Dep. Tr. of Erikson, at p. 48.**

[9] Additionally, even if the pour cup broke, which Defendant contests, this does not mean that it was defective. Products break all of the time without being deemed "defective."

[10] Even if the cup broke before the explosion, there is no evidence which establishes that the product was defective, or that said defect caused the explosion. Thus, Plaintiffs' offer of "evidence" that the cup was broken after the explosion is not even material to this analysis.

have admitted that "[w]hether or not a broken pour cup was a proximate cause of the Plaintiffs' injuries is not the province of this expert. . . ."  <u>See</u> Opposition, at Section III. b.  Again, Defendant does not take issue with the fact that Plaintiffs were injured to some extent in the explosion; however, before the court even gets to the issue of damages, it must first assess liability.  In order to establish liability here, Plaintiffs must prove that a defect in the pour cup was a proximate cause of the explosion.  As demonstrated above, Plaintiffs' sole liability expert has admitted that he cannot assist in this regard.

A review of Plaintiffs' evidence, in a light most favorable to Plaintiffs, clearly demonstrates that there is no genuine issue of material fact.  Plaintiffs cannot demonstrate, in any way, that a defect in the pour cup was a proximate cause of the explosion.

**I.     PLAINTIFFS' EXPERT IS NOT ENTITLED TO CONDUCT ADDITIONAL TESTING**

    **A.     The Scheduling Order and Rule 26(a)(2)(B) Require a Complete Opinion at the Time of Disclosure.**

In their Opposition, Plaintiffs indicate that the opinions of their sole liability expert, Erikson, "to date, as well as those conclusions reached in further testing are indeed reliable and relevant to the case at issue."  <u>See</u> Opposition, at Section IV.  This statement assumes that Erikson will be allowed to conduct further testing in this case – a misplaced assumption.

"The purpose of scheduling orders is to schedule litigation events sequentially, in order to achieve case disposition in an orderly and predictable manner."  <u>Edberg v. CPIn Inc.</u>, No. 398CV716, 2000 WL 1844651 (D. Conn. Nov. 22, 2000) (Arterton, J.), at *2, attached hereto as

Exh. B. "The verb 'complete' means 'to bring to an end' 'to make whole, entire or perfect,' 'to mark the end of'. . . . In common litigation parlance, 'completed' means 'to finish'; it does not mean to begin to bring to an end. . . ." Id., quoting *Webster's Third New International Dictionary, Unabridged* (1993).

Rule 26(a)(2)(B) requires "a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions. . . ." See Fed.R.Civ.P. 26(a)(2)(B). Pursuant to the Scheduling Order in this case, Plaintiffs' deadline to disclose their experts, pursuant to Fed.R.Civ.P. 26(a)(2)(B), was January 29, 2004. This deadline and Rule 26(a)(2)(B) created an obligation on Plaintiffs' part to provide a complete expert opinion by January 29, 2004, as defined in Edberg, *supra*; see also St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd., No. 91 Civ. 0748, 1996 WL 19028, at *11-13 (S.D.N.Y. Jan. 17, 1996)(Lowe, J.), attached hereto as Exh. C (an expert's opinions must be detailed and complete at time of disclosure pursuant to Fed.R.Civ.P. 26(a)(2)(B)). The purpose of this rule is to avoid the disclosure of "sketchy and vague" expert information. See Sierra Club v. Cedar Point Oil Co., Inc., 73 F.3d 546 (5th Cir., 1996).

    **B.  Supplementation of Erikson's Opinion is Inappropriate.**

An expert's direct testimony at trial must be limited to the contents of the expert report, as discosled under Rule 26(a)(2)(B). See Bristol-Meyers Squibb Co. v. Rhone-Poulenc Porer, Inc., No. 95 CIV 8833, 2000 WL 356412, at *2 (S.D.N.Y. Apr. 5, 2000)(Patterson, J.), attached hereto as Exh. D. No supplementation of an expert report is allowed unless the expert

witness can show that the information was not available to either him or to counsel retaining him as of the date of his report. See id.[11] In this case, Erikson's report is dated November 3, 2003, and his disclosure is dated January 29, 2004. Erikson testified that he sent a letter to Plaintiffs' counsel, dated November 3, 2003, well in advance of the expert disclosure date of January 29, 2004, in which he set forth additional information he would need to support his opinion, as well as additional testing he recommended performing in order to attempt to validate his opinion. See Dep. Tr. Of Erikson, at p.45. The letter requested certain information in Fireline's posession, which Plaintiffs' counsel could easily have requested via written discovery. While Erikson testified that he was sure Plaintiffs' counsel made such a request (see id.), in fact, no written discovery has ever been served on Fireline in this case. Moreover, there were no barriers in place which prevented Erikson from performing the additional testing/analysis he considered necessary to finalize his opinions before issuing his report.

Plaintiffs' failure to obtain this available information, coupled with Plaintiffs' refusal to allow Erikson to conduct the necessary testing prior to January 29, 2004, is not the fault of Defendant. The court simply cannot allow Plaintiffs' complete failure to prepare their case in a timely manner to prejudice the rights of Defendant, by allowing further testing and supplementation by Erikson at this time. No further testing should be allowed. The Motion for Summary Judgment should be taken on the evidence as it exists today.

---

[11] Furthermore, supplemental disclosures "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." Sierra Club, 73 F.3d at 571.

### III.     CONCLUSION

There is no genuine issue of material fact – Plaintiffs cannot establish that a defect in the pour cup was a proximate cause of the incident. Defendant is entitled to judgment as a matter of law.

WHEREFORE, and based on the foregoing reasons, this Court should enter an order granting summary judgment to the Defendant, Fireline, Inc.

> THE DEFENDANT
> FIRELINE, INC.
>
>
> By     /s/ Charles F. Gfeller
> Mark B. Seiger, Esq.
> Fed. Bar No. ct 05580
> Charles F. Gfeller, Esq.
> Fed. Bar No. ct 18119
> EDWARDS & ANGELL, LLP
> 90 State House Square
> Hartford, Connecticut 06103
> (860) 525-5065
> Telecopy (860) 527-4198

### CERTIFICATION

This is to certify that on the 6th day of July, 2004, a copy of the foregoing has been mailed via First Class U.S. Mail, postage pre-paid, to:

Thomas A. Virgulto, Esq.
Mongillo, Insler & Virgulto, P.C.
26 Elm Street
New Haven, CT  06510

>      /s/ Charles F. Gfeller
> Charles F. Gfeller