

2000 WL 356412  
**(Cite as: 2000 WL 356412 (S.D.N.Y.))**

Page 1

**H**  
Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

BRISTOL-MYERS SQUIBB COMPANY, Plaintiff,  
v.  
RHONE-POULENC PORER, INC., Centre National De La Recherche Scientifique, and Rhone-Poulenc Rorer, S.A., Defendants.

No. 95 CIV 8833 RPP.

April 5, 2000.

Fitzpatrick, Cella, Harper & Scinto, New York, NY, By: Thomas H. Beck, for Plaintiff.

Rogers & Wells LLP, New York, NY, By: Philip E. Roux, for Defendants.

OPINION AND ORDER

PATTERSON, J.

*1 Plaintiff Bristol-Myers Squibb Company ("Bristol") by letter dated March 8, 2000, requests an order that the expert reports of defendant Rhone-Poulenc Rorer, Inc. ("RPR") be amended to require a full statement of the expert opinions and the basis for these opinions pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. In addition, Bristol complains that RPR has submitted 42 expert reports and asks that Court to require RPR to reduce the number of expert reports and to permit Bristol additional time to respond.

RPR, by letter dated March 16, 2000, opposes the issuance of such an order and requests an order precluding Bristol from presenting expert testimony in support of any contention that any off-the-market product was an "available" non-infringing substitute for Taxol (R), asserting that, "[u]nder *Grain Processing Corp. v. American Maize-Products,* 185 F.3d 1341, 1352 (Fed.Cir.1999), Bristol has the burden of proof on this issue and, yet it submitted no expert report on this point by the February 25, 2000 deadline." (RPR Letter dated 3/16/00 at 1.)

On March 24, 2000, Bristol submitted a letter in reply.

These motions arise in the context of almost four years of discovery by the parties. Fact discovery ended two months ago, [FN1] with the exception of RPR's discovery of the availability of off-the-market products described in answers by Bristol to certain RPR contention interrogatories as constituting "available," non-infringing alternatives. The Court authorized RPR to conduct such discovery after the discovery cut off in view of Bristol's response to that interrogatory at the end of the discovery period.

> FN1. Included in fact discovery were extensive and detailed answers to contention interrogatories setting forth the position of each party on the many issues of this contentious litigation.

RPR's argument that its initial expert reports are complete and sufficient is inappropriate in the context of this case and the scheduling orders issued by the Court. Each party was given two months to review the expert reports of the other side. RPR, since it bears the burden of proof of infringement, was to produce its expert reports first. The provision in the discovery schedule for rebuttal expert reports does not permit RPR to evade the requirements of Rule 26(a)(2) in its submission of initial expert reports.

Rule 26(a)(2) of the Federal Rules of Civil Procedure provides that "a witness who is retained or specially employed to provide expert testimony" pursuant to Rules 702, 703 or 705 of the Federal Rules of Evidence shall be identified and provide a

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2000 WL 356412 Page 2
**(Cite as: 2000 WL 356412 (S.D.N.Y.))**

written report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions." Fed.R.Civ.P. 26(a)(2)(B). The report must be "detailed and complete ... stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." Advisory Committee Notes, 1993 Amendments, paragraph 2. *See also Walsh v. McCain Foods Ltd.,* 81 F.3d 722, 727 (7 th Cir.1996); *Sierra Club v. Cedar Point Oil Co.,* 73 F.3d 546, 571 (5 th Cir.1996), *cert. denied, Cedar Point Oil Co. v. Sierra Club,* 519 U.S. 811 (1996).

**\*2** Since fact discovery is complete, the parties are hereby placed on notice that direct testimony by any expert witness at trial shall be limited to the contents of the Expert Report accompanying the designation of the witness and not any supplementation of the Expert Report unless the witness can show that such material was not available either to him or to counsel retaining him as of the date of his report. In any Rebuttal Report, an expert must disclose to the other party, as required by Fed.R.Civ.P. 26(e)(1), any additions or changes in the expert's opinions or to the basis and reasons therefor or in the data or other information considered by the witness in forming the opinions.

RPR is ordered to revise its initial expert reports to comply with Rule 26(a)(2) by April 10, 2000. It is counsel's responsibility to make sure that the expert reports comply with Fed.R.Civ.P. 26. *Salgado By Salgado v. General Motors Corp.,* 150 F.3d 735, 741-42 n. 6 (7 th Cir.1998). ("It is the responsibility of the attorney to ensure that the expert's report contains complete opinions that are properly and thoroughly set forth and supported; it should be the goal of the parties to eliminate surprise, avoid unnecessary depositions and reduce costs.") Compliance with Rule 26, in particular the requirement of total disclosure, is emphasized in the Advisory Committee Comments. *Id.* Counsel are ordered to study the footnote in *Salgado* and adhere to it.

The Court's review of Bristol's complaint about the Expert Reports of Messrs. Martin, Osborne, Keiller and Jarosz indicates that they are not in compliance with Rule 26(a)(2)(B). Rather than explicate those deficiencies and other deficiencies in the reports, the Court, if necessary, will review the revised reports at time of trial pursuant to the Rule 26(a)(2)(B) standard and consider what action, if any, to take under Rule 37(c)(1) of the Federal Rules of Civil Procedure.

RPR's request for an order precluding Bristol from presenting expert testimony in support of any contention that any off-the-market product was an "available" non-infringing substitute for Taxol (R), the alleged infringing product is denied. The availability of non-infringing substitutes only becomes an issue if plaintiff is seeking lost profits on its sale of Taxotere or a product manufactured under the process patent which is being infringed. As stated in *Grain Processing Corp. v. American Maize-Products Co.:*

> To recover lost profits, the patent owner must show "causation in fact," establishing that "but for" the infringement, he would have made additional profits. When basing the alleged lost profits on lost sales, the patent owner has an initial burden to show a reasonable probability that he would have made the asserted sales "but for" the infringement. Once the patent owner establishes a reasonable probability of "but for" causation, "the burden then shifts to the accused infringer to show that [the patent owner's 'but for' causation claim] is unreasonable for some or all of the lost sales."

**\*3** 185 F.3d 1341, 1349 (Fed.Cir.1999) (internal citations omitted).

Bristol must have the opportunity to review RPR's lost profits expert reports before each of its experts presents detailed and thorough reports on the availability of the non-infringing substitutes it contends reduce or eliminate RPR's lost profits evidence.

The number of expert reports designated by RPR presents a problem of significant dimension. This is a jury case. The prospect of 42 expert witnesses for RPR raises questions about the length of trial, the jury impanelment procedures to be utilized, as well as the obvious question of whether a jury is likely to remain attentive and to deliberate on each of the issues raised by attorneys for two corporations unwilling to reach a business accommodation.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2000 WL 356412 Page 3
**(Cite as: 2000 WL 356412 (S.D.N.Y.))**

Accordingly, counsel for each party are directed to make a written proposal to the Court by April 14, 2000 as to a method by which this case may be presented to the jury in a meaningful manner, including a reduction in the number of expert witnesses. Such presentation should outline in general terms the scope of each witness's expert testimony so that the necessity for such witness to be called can be weighed.

IT IS SO ORDERED.

2000 WL 356412, 2000 WL 356412 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2002 WL 32151947 (Trial Order) Opinion and Order (Jan. 15, 2002)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works