UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALEXANDER GRAHAM and JOSE CUEVAS | : | CIVIL NO. 3:03 CV 990 (AWT) |
| Plaintiffs, | : | |
| V. | : | |
| FIRELINE, INC. | : | |
| Defendant. | : | JULY 6, 2004 |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO PRECLUDE PROFFERED EXPERT TESTIMONY OF RAYMOND J. ERIKSON**

Pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert*"), the defendant, Fireline, Inc. ("Defendant" or "Fireline"), through its undersigned counsel, hereby submits this Reply Brief in Support of its Motion to Preclude Proffered Expert Testimony of Raymond J. Erikson.[1]

**I.   ERIKSON SHOULD BE PRECLUDED**

    **A.   Erikson's Qualifications Do Not Meet the Necessary Threshold of Reliability.**

Plaintiff's sole liability expert, Raymond J. Erikson ("Erikson") has one opinion in this case - that the Fireline pour cup was defective in that it was made of a material - fused silica -

---

[1] Defendant relies upon its Memorandum of Law in Support of Motion to Preclude Proffered Expert Testimony of Raymond J. Erikson, dated June 15, 2004 ("Memorandum"), and in the interests of judicial economy does not restate the law and argument cited therein. For a full analysis, please see the Memorandum.

which is not proper for the application in use at Ansonia Copper & Brass ("AC&B"). <u>See</u> <u>Exhibit B</u> to Memorandum and Dep. Tr. Of Erikson, at 99.[2]

Erikson's qualifications with respect to fused silica and its uses are, at best, dubious. <u>See</u> Dep. Tr. Of Erikson, at pp. 23-25. Erikson has never even visited AC&B or observed the processes and applications in use there. <u>See</u> Dep. Tr. Of Erikson, at pp. 23-25. Moreover, he is unfamiliar with the processes and materials used by Fireline in the design and manufacture of the pour cups. <u>See</u> Dep. Tr. Of Erikson, at pp. 29. If he lacks expertise with respect to this material and its uses at AC&B, then how can he render an expert opinion which holds that the material is improper for use in this particular application? Despite Plaintiffs' claims that Erikson's qualifications with respect to fused silica and the AC&B application are somehow irrelevant, they are not, and he is not qualified to render expert testimony in this case. <u>See</u> Memorandum, at pp. 10 – 12.

Plaintiffs argue that Erikson conducted his experimentation according to "sound math and science." <u>See</u> Opposition at Section III. However, Erikson has admitted that despite rendering an expert report, which according to the rules must reflect his final and complete opinion (<u>see</u> discussion *infra*), he is still in the "initial phases of this investigation." <u>See</u> Dep. Tr. Of Erikson at p. 102. Given this admission and his clear lack of qualifications as to the materials and their application, how can Erikson's work be said to reflect sound science?

---

[2] Defendant has attached all cited portions of Erikson's deposition as <u>Exh. A</u> hereto.

### B.     Erikson Cannot Testify That A Defect in The Pour Cup Was a Proximate Cause of the Explosion.

In order for Plaintiffs, Jose Cuevas ("Cuevas") and Alexander Graham ("Graham") (collectively "Plaintiffs") to prevail in this case, they must present expert testimony demonstrating a causal nexus between the alleged defect in the pour cup and the incident at issue. See Gold v. Dalkon Shield Claimants Trust, No. B-82-383, 1998 U.S. Dist. LEXIS 22413 at *5 (D. Conn. June 15, 1998) (Burns, J.), attached hereto Exh. B.

There is no disputing the fact that an explosion occurred at AC&B on June 3, 2000, or that Plaintiffs were injured as a result of the explosion.[3]  **The issue, which Plaintiffs seem to have missed, is whether the explosion was, in fact, *caused* by a defect in the pour cup.**

Even if Defendant were to concede, for purposes of this motion, that (1) Erikson is qualified to render an opinion in this case, and (2) that Erikson's conclusion regarding the improper use of fused silica for this application is correct, points Defendant will obviously not concede, Erikson's only actual opinion serves no relevant purpose.  If he is allowed to testify that the product was, in his opinion, defective, where does this get us?  The answer is simple – nowhere.

As Plaintiffs point out in their Opposition, Erikson was given a "mandate," and the subject matter of his inquiry and investigation was the "cause of the failure of the ceramic pouring cup, which resulted in a billet leak and thereafter caused an explosion of steam and

---

[3] Defendant may take issue with the extent of the injuries claimed.

molten metal which ultimately injured the Plaintiff's (*sic*)." See Opposition, at Section III., quoting Plaintiffs' Disclosure of Expert, dated January 29, 2004. This mandate makes a huge analytical leap and assumes that (1) the cup failed, and (2) the failure of the cup *caused* the billet to leak, which thereafter caused the explosion. However, Erikson has specifically testified that he has assumed the cup failed[4] and that he cannot say whether said failure was a proximate cause of the explosion.[5] Instead, Erikson has merely come up with a laundry list of seven *possible* causes of the explosion, and he is not certain which, *if any* of these causes, was, in fact, the proximate cause of this incident because he has done nothing to validate what he admits is merely a hypothesis.

He testified as follows:

> *Q:  So as you sit here today, you have nothing more than just a hypothesis that a broken cup may have brought about this injury or may have been the proximate cause of the injury?*
>
> *A:  Yes, that's a possibility.*
>
> *Q:  And there are several other possibilities?*
>
> *A:  There are other possibilities.*
>
> *Q:  Did anybody ever ask you to determine which would be the more likely possibility of the other possibilities that you've come up with?*
>
> *A:  No, I don't think so.*

---

[4] See Dep. Tr. Of Erikson at pp. 63-65.
[5] See Dep. Tr. of Erikson, at pp. 88 and 128 – 129, quoted *infra*.

(emphasis added). Dep. Tr. of Erikson, at pp. 107. [6]

In fact, Erikson specifically testified that he <u>cannot</u> testify as to the proximate cause of this <u>incident</u>. He testified as follows:

> *Q:     Mr. Erikson, do you have an opinion as to whether or not the <u>incident</u> giving rise to the lawsuit that we're here on was a direct and proximate result of the pour cup breaking?*
>
> *A:     No, I do not.*

(emphasis added). Dep. Tr. of Erikson, at pp. 128 – 129.

In their Opposition, Plaintiffs state that "Mr. Erikson was given the responsibility of examining the exemplar pouring cups provided, in order to determine whether they *could* break during service. This issue, and this alone, is what motivated Mr. Erikson's inquiry." (emphasis added). <u>See</u> Opposition, at Section III. Whether the pour cups *could* break during service is of no significance. ***The real issues are whether the pour cup at the south mold of Station No. 21 did, in fact, break, due to a defect, and whether said failure was a proximate cause of this***

---

[6] Erikson has presented Defendant and the Court with a laundry list of seven *possible* causes of this incident. He testified as follows:

> Q:     Let's go back to your report, and you can open page 3 of that report, which is your analysis. And on page 3, the analysis starts off with this statement, "There are a number of ways a direct, hyphen, chill, paren., DC, close paren., billet casting operation can go awry."
>
> And I take it what you were trying to do was lay out alternative causes for what happened to the plaintiffs in this case?
>
> A:     Yeah. These are some of the ways that [I] saw that you could have the results that were observed develop.

Dep. Tr. of Erikson, at pp. 81-82; <u>see</u> also Engineer's Report, attached to Defendant's Memorandum as <u>Exh.</u> C.

*explosion. Erikson was given an incomplete assignment, and Plaintiffs have no other expert who is prepared to testify that there was a defect, which caused a failure, which then caused the explosion.*

Without expert testimony supporting the allegation that the pour cup was defective <u>and</u> that said defect was a proximate cause of the explosion, Plaintiffs cannot prevail in this case. Erikson's testimony will not assist the trier of fact (in this case, the court) in any way.

### C.  Plaintiffs Are Unable To Take "Large Steps" Toward Establishing Liability.

In their Opposition, Plaintiffs state that "[i]f the Plaintiff (*sic*) can prove that the pouring cup failed, due to a design defect, or an inappropriate use of same, and that this factor led to the leak of the south billet, the Plaintiff's (*sic*) will have taken large steps toward establishing liability." <u>See</u> Opposition, at Section III. b.  Again, Plaintiffs' expert has put forth various hypotheses as to what *may* have caused the explosion to occur; however, even he admits that he does not know which, if any, of these possible scenarios <u>actually</u> <u>caused</u> the explosion, let alone that a defect in the pour cup was the proximate cause of the incident.  <u>See</u> testimony cited *supra*.

The mere fact that the OSHA report, cited in Plaintiffs' Opposition, mentions that the bottom of the pour cup was apparently broken off *after* the explosion does not, in any way, establish that the cup was broken *before* the explosion.  **It is important to remember that the pour cup is a ceramic, and so it should come as no surprise that it may have broken <u>as a result of</u> the explosion.  In fact, Erikson has testified that ceramics are brittle.  <u>See</u> Dep. Tr. of Erikson, at p. 48.**  The OSHA report does not state, or even suggest, that the explosion was

*caused* by a defect in the pour cup. Certainly these references, cited in Plaintiffs' Opposition, do not even put the ball in the air, let alone over the fence.[7]

Plaintiffs have even tried to confuse the court by arguing that their medical experts, not Erikson, will causally link the explosion to the injuries allegedly suffered by the Plaintiffs. They have admitted that "[w]hether or not a broken pour cup was a proximate cause of the Plaintiffs' injuries is not the province of this expert. . . ." See Opposition, at Section III. Again, Defendant does not take issue with the fact that Plaintiffs were injured to some extent in the explosion; however, before the court even gets to the issue of damages, it must first assess liability. In order to establish liability here, Plaintiffs must prove that a defect in the pour cup was a proximate cause of the explosion. As demonstrated above, Plaintiffs' sole liability expert has admitted that he cannot assist in this regard. His testimony adds nothing to this case.

## II. PLAINTIFFS' EXPERT IS NOT ENTITLED TO CONDUCT ADDITIONAL TESTING

### A. The Scheduling Order and Rule 26(a)(2)(B) Require a Complete Opinion at the Time of Disclosure.

In their Opposition, Plaintiffs anticipate that Erikson will conduct further testing in an attempt to confirm the conclusions made in his report. See Opposition, at Section III. However, further testing and/or analysis must not be allowed at this point. "The purpose of scheduling orders is to schedule litigation events sequentially, in order to achieve case disposition in an

---

[7] Additionally, even if the pour cup broke, which Defendant contests, this does not mean that it was defective. Products break all of the time without being deemed "defective."

orderly and predictable manner." Edberg v. CPIn Inc., No. 398CV716, 2000 WL 1844651 (D. Conn. Nov. 22, 2000) (Arterton, J.), at *2, attached hereto as Exh. C. "The verb 'complete' means 'to bring to an end' 'to make whole, entire or perfect,' 'to mark the end of'. . . . In common litigation parlance, 'completed' means 'to finish'; it does not mean to begin to bring to an end. . . ." Id., quoting *Webster's Third New International Dictionary, Unabridged* (1993).

Rule 26(a)(2)(B) requires "a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions. . . ." See Fed.R.Civ.P. 26(a)(2)(B). Pursuant to the Scheduling Order in this case, Plaintiffs' deadline to disclose their experts, pursuant to Fed.R.Civ.P. 26(a)(2)(B), was January 29, 2004. This deadline and Rule 26(a)(2)(B) created an obligation on Plaintiffs' part to provide a complete expert opinion by January 29, 2004, as defined in Edberg, *supra*; see also St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd., No. 91 Civ. 0748, 1996 WL 19028, at *11-13 (S.D.N.Y. Jan. 17, 1996)(Lowe, J.), attached hereto as Exh. D (an expert's opinions must be detailed and complete at time of disclosure pursuant to Fed.R.Civ.P. 26(a)(2)(B)). The purpose of this rule is to avoid the disclosure of "sketchy and vague" expert information. See Sierra Club v. Cedar Point Oil Co., Inc., 73 F.3d 546 (5th Cir., 1996). Neither Erikson's report, nor his opinion, were complete as of January 29, 2004. In fact, Erikson has admitted that he is still in the "initial phases of this investigation." See Dep. Tr. Of Erikson at p. 102. Erikson's report is, at best, "sketchy and vague." As the caselaw cited herein makes clear, Plaintiffs cannot be allowed two bites at the apple.

### B.   Supplementation of Erikson's Opinion is Inappropriate.

Plaintiff's reliance upon Fed.R.Civ.P. 26(e)(1) is misplaced. An expert's direct testimony at trial must be limited to the contents of the expert report, as discosled under Rule 26(a)(2)(B). See Bristol-Meyers Squibb Co. v. Rhone-Poulenc Porer, Inc., No. 95 CIV 8833, 2000 WL 356412, at *2 (S.D.N.Y. Apr. 5, 2000)(Patterson, J.), attached hereto as Exh. E. No supplementation of an expert report is allowed unless the expert witness can show that the information was not available to either him or to counsel retaining him as of the date of his report. See id.[8]

In this case, Erikson's report is dated November 3, 2003, and his disclosure is dated January 29, 2004. Erikson testified that he sent a letter to Plaintiffs' counsel, dated November 3, 2003, well in advance of the expert disclosure date of January 29, 2004, in which he set forth additional information he would need to support his opinion, as well as additional testing he recommended performing in order to attempt to validate his opinion. See Dep. Tr. Of Erikson, at p.45. The letter requested certain information in Fireline's posession, which Plaintiffs' counsel could easily have requested via written discovery. While Erikson testified that he was sure Plaintiffs' counsel made such a request (see id.), in fact, no written discovery has ever been served on Fireline in this case. Moreover, there were no barriers in place which prevented

---

[8] Furthermore, supplemental disclosures "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." Sierra Club, 73 F.3d at 571.

Erikson from performing the additional testing/analysis he considered necessary to finalize his opinions <u>before</u> issuing his report.

Plaintiffs' failure to obtain this available information, coupled with Plaintiffs' refusal to allow Erikson to conduct the necessary testing prior to January 29, 2004, is not the fault of Defendant. The court simply cannot allow Plaintiffs' complete failure to prepare their case in a timely manner to prejudice the rights of Defendant, by allowing further testing and supplementation by Erikson at this time. No further testing should be allowed. The Motion to Preclude should be taken on the evidence as it exists today.

### III. CONCLUSION

WHEREFORE, and based on the foregoing reasons, this Court should enter an order granting Defendant, Fireline, Inc.'s Motion to Preclude Proffered Expert Testimony of Raymond J. Erikson.

> THE DEFENDANT
> FIRELINE, INC.
>
>
> By_____/s/ Charles F. Gfeller_____
> Mark B. Seiger, Esq.
> Fed. Bar No. ct 05580
> Charles F. Gfeller, Esq.
> Fed. Bar No. ct 18119
> EDWARDS & ANGELL, LLP
> 90 State House Square
> Hartford, Connecticut 06103
> (860) 525-5065
> Telecopy (860) 527-4198

- 11 -

## CERTIFICATION

      This is to certify that on the 6th day of July, 2004, a copy of the foregoing has been mailed via First Class U.S. Mail, postage pre-paid, to:

Thomas A. Virgulto, Esq.
Mongillo, Insler & Virgulto, P.C.
26 Elm Street
New Haven, CT  06510

                                                  /s/ Charles F. Gfeller
                                                  Charles F. Gfeller